**Oliver T. FEIN, Plaintiff-Appellant,**

v.

**SELECTIVE SERVICE SYSTEM LOCAL BOARD NO. 7, YONKERS, NEW YORK,** Selective Service Appeal Board for the Southern District of New York, Col. John W. Brokaw, Acting Director, New York Selective Service System, New York State Selective Service Director, National Selective Service Appeal Board, Defendants-Appellees.

No. 626, Docket 33737.

United States Court of Appeals, Second Circuit.

Argued March 24, 1970.

Decided July 23, 1970.

Michael B. Standard, New York City (Rabinowitz, Boudin & Standard, New York City, of counsel), for plaintiff-appellant.

Peter R. DeFilippi, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, Patricia M. Hynes, Asst. U. S. Atty., of counsel), for defendants-appellees.

Before LUMBARD, Chief Judge, HAYS, Circuit Judge, and BLUMENFELD,* District Judge.

BLUMENFELD, District Judge.

Appellant is a doctor of medicine. While obtaining his education, he was classified II–S (student deferment), and upon graduation and while serving as an intern, he was classified II–A (occupational deferment). In September 1967, while still II–A, he wrote to the local board stating his conscientious objection to war and requesting the appropriate forms. He filed an application for a I–O (conscientious objector) classification and appeared before the local board. Finding that Fein did not qualify for a I–O "at that time," the board retained him in his II–A status. In February 1968 he was classified I–A by the local board, but following a personal appearance on May 22, 1968, that board found that he qualified as a conscientious objector and classified him I–O.

About two weeks later, this classification was appealed to the state appeal board by the State Director of Selective Service. 32 C.F.R. § 1626.1 (1951). Appellant sought from both the local and appeal boards a statement of reasons for the appeal, notification of the standards to be applied on appeal, advice as to whether additional information outside his file was to be presented, and an opportunity to rebut findings by the appeal board as to the appropriateness of his classification. He received no pertinent response before the decision of the appeal board was rendered. On June 20, 1968, the appeal board, by a vote of 4–0, reversed the local board and reinstated appellant in class I–A. It gave no reason for that action.

On September 16, 1968, the National Selective Service Director, at Fein's request (no right of appeal by the registrant being available from an unanimous vote of the appeal board, 32 C.F.R. § 1627.3 (1967)), appealed the decision to the Presidential Appeal Board. 32 C.F.R. § 1627.1(a) (1948). Meanwhile, on October 31, 1968, the state director wrote to Fein stating that in his opinion Fein did not qualify as a conscientious objector and that his decision to appeal the local board's I–O classification was based on information in Fein's selective service file. On November 26, 1968, the Presidential Board, without a statement of reasons, upheld the appeal board.

---

* Of the District of Connecticut, sitting by designation.

The appellant then brought this action in the district court seeking an injunction against his induction into the armed forces and a judgment that his reclassification from I–O to I–A was null and void.

Jurisdiction was predicated on 28 U.S.C. §§ 1331, 1343, 1361, 1391 and 2201, and on an allegation that the matter in controversy exceeded the value of $10,000 exclusive of interest and costs.[1]

The plaintiff claimed that his reclassification from I–O to I–A violated his fifth amendment right to due process in that the regulations contained no provisions requiring notice to the registrant of the reasons for appeal by the State Selective Service Director, nor for a statement of the bases of decision by the respective appeal boards and did not provide for an opportunity to present evidence to rebut the state director's appeal.

Deciding that pre-induction judicial review of the plaintiff's classification was explicitly barred by 50 U.S.C. App. § 460(b) (3) (§ 10(b) (3) of the Selective Service Act of 1967), Judge Tyler in a well-considered opinion denied the plaintiff's motion for summary judgment and dismissed the complaint for lack of subject matter jurisdiction. We agree.

Congress amended § 10(b) (3) in 1967 to add an explicit bar to judicial review

"of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction. * * *"

in answer to Wolff v. Selective Serv. Bd., 372 F.2d 817 (2d Cir. 1967), which had permitted pre-induction judicial review of local board reclassifications of two II–S registrants into class I–A because of their participation in a demonstration protesting American involvement in Vietnam. Within a year after the amendment, a challenge to its scope reached the Supreme Court in Oestereich v. Selective Serv. Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). Oestereich was a divinity student admittedly entitled to a statutory exemption from military service under § 6(g) of the Act, 50 U.S.C. App. § 456(g) (1967). His draft board declared that he was a delinquent and simultaneously reclassified him as I–A for having turned in his draft card in protest to American participation in the Vietnam war. Finding that the board had acted in a "blatantly lawless manner" by depriving him of his "statutory right" to an exemption, id. at 238–39, 89 S.Ct. 414, the Court held that to read the amendment literally to deny pre-induction review in such a case would be "to construe the Act with unnecessary harshness." Id. at 238, 89 S.Ct. at 416.

Having departed to that extent from a literal reading of § 10(b) (3),[2] the

---

1. The Supreme Court has not yet ruled on the jurisdictional basis for an action by a selective service registrant seeking pre-induction review of his classification, although it has entertained several such cases on the merits. Oestereich v. Selective Serv. Bd., 393 U.S. 233, 239, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) (where the remand stated in part: "petitioner must have the opportunity * * * to demonstrate that he meets the jurisdictional requirements of 28 U.S.C. § 1331"); Clark v. Gabriel, 393 U.S. 256, 259, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968) (where the Court granted leave to proceed in forma pauperis); Boyd v. Clark, 393 U.S. 316,

89 S.Ct. 553, 21 L.Ed.2d 511 (1969) (affirming 287 F.Supp. 561 (S.D.N.Y.1968) "without reaching the jurisdictional question raised under 28 U.S.C. § 1331"). Peremptory dismissal is seldom ordered unless it appears to a legal certainty that the claim is for less than the jurisdictional amount. St. Paul Mercury Indemn. Co. v. Red Cab Co., 303 U.S. 283, 290, 59 S.Ct. 586, 82 L.Ed. 845 (1938). In this case, the court below did not reach the issue.

2. The Court in Oestereich also noted that while § 10(b) (3) on its face purports "to suspend the writ of habeas corpus

Court undertook to elaborate its Oester-eich holding through its opinion in Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), decided the same day. Clark v. Gabriel held that § 10(b) (3) of the Act barred prein-duction review of the denial of a claim to classification as a conscientious objec-tor. The Court explained *Oestereich* as a case where the board action was "without statutory basis and in conflict with petitioner's rights explicitly estab-lished by the statute and not dependent upon an act of judgment by the Board. Oestereich, as a divinity student, was by statute unconditionally entitled to exemption." *Id.* at 258, 89 S.Ct. at 426. Sharply distinguishing that situation[3] from the one before it, the Court said:

"Here, by contrast, there is no doubt of the Board's statutory authority to take action which appellee challenges, and that action inescapably involves a determination of fact and an exercise of judgment." *Id.*

And, to avoid any risk of being misun-derstood, Mr. Justice Douglas, who wrote for the majority in *Oestereich,* concurred in *Gabriel,* and after noting some hypothetical examples of lawless board action, went on to say: "[I]t takes the extreme case where the Board can be said to flout the law, as it did in Oestereich [393 U.S. at 233, 89 S.Ct. 414], to warrant pre-induction review of its actions." *Id.* at 260, 89 S.Ct. at 427.

These two decisions by the Court con-vincingly dispel the notion that pre-in-duction review may be obtained simply by framing issues in terms of purely le-gal questions divorced from their factual context,[4] a tour de force attempted by the appellant in this case.

The limitation of pre-induction review to cases of "blatantly lawless" action by the board gained further confirmation in Boyd v. Clark, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969), which af-firmed a denial of pre-induction review to registrants classified I–A, in a one-sentence per curiam opinion: "The judgment is affirmed, Clark v. Gabriel [393 U.S. at 256, 89 S.Ct. 424], without reaching the jurisdictional question raised under 28 U.S.C. § 1331." In *Boyd,* the plaintiffs challenged their classification on several legal grounds without in any way contesting the dis-cretionary or fact-finding aspects of the local board's decision to classify them I–A. *See* opinion below, Boyd v. Clark, 287 F.Supp. 561 (S.D.N.Y.1968). In-deed, among the constitutional claims as-serted in *Boyd* were some which had a source in common with those asserted by the appellant here: the due process clause of the fifth amendment. See Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

Although the law of new cases may never be open and shut,[5] we have

---

as a vehicle for reviewing a criminal conviction under the Act, everyone agrees that such was not its intent." *Id.* at 238, 89 S.Ct. at 416.

3. Breen v. Selective Serv. Local Bd., 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), was held indistinguishable from *Oestereich.* The Court found that because there was no lawful basis for the use of delinquency regulations in that case to warrant the revocation of a statutorily mandated student deferment, § 10(b) (3) did not preclude pre-induction review.

4. The government's Jurisdictional State-ment in *Gabriel* shows that Gabriel raised several constitutional issues which could have been passed on without in-

quiry into findings of fact or exercise of discretion by the local board. See Breen v. Selective Serv. Local Bd., 406 F.2d 636, 639 (2d Cir. 1969), rev'd on other grounds, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970).

5. The view that § 10(b) (3)'s proscription against pre-induction review imposes such a risk of severe penalty as to "raise seri-ous constitutional problems" in challenges to the administrative procedure of classifi-cation itself without accompanying chal-lenges to matters within the local board's discretion was suggested by Mr. Justice Harlan in his concurring opinion in *Oestereich,* 393 U.S. at 243, 89 S.Ct. 414, as a basis for a broader holding than that adopted by the majority of the Court.

been furnished with sufficient guidance to hold that an appeal board does not flout the law in a blatantly lawless manner merely because the President has not provided certain procedural safeguards to govern the Selective Service System's administrative tribunals in determining whether a registrant is a genuine conscientious objector not "subject" to combatant training or service under § 6(j) of the Act, 50 U.S.C. App. § 456(j) (1967). See Falbo v. United States, 320 U.S. 549, 554, 64 S.Ct. 346, 88 L.Ed. 305 (1944). Cf. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

■ The appellant had no clear statutory right to a I–O classification. Allegations of constitutional infirmities in the classification procedures did not bring this case within any exception to the bar of § 10(b) (3).

Accordingly, the order of Judge Tyler dismissing the complaint is affirmed.

HAYS, Circuit Judge (concurring).

I concur in Judge Blumenfeld's opinion in regard to § 10(b) (3) but would also rely upon failure to establish the jurisdictional amount under § 1331 as a ground for affirming the trial court's dismissal of the action. See Boyd v. Clark, 287 F.Supp. 561 (three judge court) (S.D.N.Y.1968), aff'd on other grounds 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1968).

LUMBARD, Chief Judge (dissenting).

I dissent.

After lengthy correspondence, two personal interviews, and extensive personal testimonials, Dr. Fein was granted conscientious objector status by his local board. The State Director, without stating any grounds, appealed the classification, and the State Appeal Board re-

versed and reclassified Fein I–A. The State Appeal board gave no reasons for its decision, it did not permit Fein to submit a statement in support of his classification, and it may not even have relied solely on information in the file. In this suit to enjoin his induction Fein argues that such treatment does not meet minimum standards of due process, as developed by the federal courts over the last three decades. See, e. g., Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 999, 82 L.Ed. 1129 (1938). I agree.

The majority, however, holds that, as interpreted by the Supreme Court, Section 10(b) (3) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 460(b) (3), bars the preinduction review sought by Dr. Fein. I cannot accept my brothers' readings of the relevant Supreme Court decisions. To me, Fein's claim is not barred by the literal words of Section 10(b) (3), and I think the exception to that section recognized by the court in Oestereich v. Selective Service, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) reaches this case as both here and in *Oestereich* a presidential regulation must fall to a higher command. I would also hold that the $10,000 jurisdictional amount required by 28 U.S.C. § 1331 is satisfied by Fein's allegations.

## I. *Section 10(b) (3)*

The language of Section 10(b) (3) prescribes preinduction review "of the classification or processing of any registrant." Concurring in *Oestereich*, Mr. Justice Harlan gave a gloss to those words which I accept. He read "classification or processing" to encompass "the numerous discretionary, factual, and mixed law-fact determinations which a Selective Service Board must make prior

That view was implicitly rejected without discussion in Boyd v. Clark, 393 U.S. at 316, 89 S.Ct. 553.

Nor was the majority in *Breen* yet ready to adopt his view, again expressed by way of a concurring opinion in that case, that pre-induction review should

not be limited to cases where there is a deprivation of a clear statutory right to a certain classification. Without reweighing all the values, the present rule does give some recognition to the purpose of Congress to limit pre-induction review.

to issuing an order to report for induction." 393 U.S. at 240, 89 S.Ct. at 417. At issue in this case, however, are procedural rules governing appeals to the State and Presidential Appeal Boards, and I do not read Section 10(b) (3) as explicitly barring a claim that the procedures involved are invalid under the due process clause. At stake is not a board determination "processing or classifying" the registrant, but the procedures underlying the way such determinations are made.[1]

My brothers argue, however, that this interpretation of Section 10(b) (3) is foreclosed by the opinions of the Court in Oestereich, Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S. Ct. 661, 24 L.Ed.2d 653 (1970), and Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968). A reading of these cases leads me to the opposite conclusion, as I find the claim of Board "lawlessness" Fein raises to be substantially similar to the situations presented in Oestereich and Breen.

Oestereich was enrolled as a divinity student preparing for the ministry when he turned in his draft card to protest the United States' participation in the war in Vietnam. Shortly thereafter, his local board declared him delinquent for failure to have his registration certificate in his possession and to keep the board informed of his local status. The Board then reclassified him I–A and, after an unsuccessful appeal, he was ordered to report. At that point, he brought suit to restrain his induction. Breen is quite similar, save that the petitioner was a college student with a II–S deferment when he was declared delinquent and reclassified I–A.

In Oestereich, the Court framed the question presented as whether Section 10(b) (3) barred a preinduction challenge to a reclassification based on the delinquency regulation. The Court held, first, that as there was no statutory authorization for the Board to revoke the statutorily-based ministerial exemption, its action was "basically lawless"; second, that Section 10(b) (3)'s restriction on preinduction review cannot, if it be constitutional, be read literally as a literal reading would command that the writ of habeas corpus be suspended; and third, that an exception must be implied to permit review of board actions which revoke a statutory right on the basis of a power conferred only by Selective Service regulations. Breen follows Oestereich closely, the only difference being that Breen had a statutory deferment rather than an exemption.

Clark v. Gabriel, 393 U.S. 256, 89 S. Ct. 424, 21 L.Ed.2d 418 (1968), decided the same day as Oestereich, confirmed

---

1. This interpretation of the section is reinforced by its legislative history. In his Oestereich concurrence, Mr. Justice Harlan isolated two major considerations behind Congress' decision to defer judicial review of decisions involving classification or processing. First, because these determinations are of a highly discretionary nature, judicial review—although narrow—still would take considerable time, as often the courts must examine board records, hear testimony, and resolve controversies on a sizeable record. Second, it can be presumed that, with the full opportunity to be heard afforded by the system, a registrant's board has classified him properly, in accordance with the applicable statutes and regulations. See 393 U.S. at 240–41, 89 S.Ct. 414.

These factors, as Mr. Justice Harlan points out, are significantly altered when the registrant challenges a procedure used by the system. This sort of claim does not require the court to review discretionary determinations, so there is no protracted delay; usually, the case can be tried on a stipulated set of facts. Further, there can be no presumption of regularity, since the issues raised are beyond the system's competence, perhaps even its jurisdiction. On my reading of the legislative history, Congress passed Section 10(b) (3) to meet a specific problem: the vexatious delays caused by preinduction review of certain kinds of claims. See Clark v. Gabriel, 393 U.S. 256, 258–59, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968). Had Congress wanted to prevent all registrants from seeking the aid of the federal courts on any matter involving the Selective Service System before induction, it would have used general language, not a specific prohibition covering only two areas.

Mr. Justice Douglas' statement in *Oestereich* that "[o]ur construction leaves § 10(b) (3) unimpaired in the normal operations of the Act." 393 U.S. at 238, 89 S.Ct. at 416. Gabriel sought preinduction review of the board's refusal to grant him conscientious objector status. In holding that Section 10(b) (3) barred the suit, the court per curiam in a unanimous opinion explained *Oestereich*:

> "In *Oestereich* the delinquency procedure by which the registrant was reclassified was without statutory basis and in conflict with petitioner's rights explicitly established by the statute and not dependent upon an act of judgment by the Board. Oestereich, as a divinity student, was by statute unconditionally entitled to exemption. Here, by contrast, there is no doubt of the Board's statutory authority to take action which appellee challenges, and that action inescapably involves a determination of fact and an exercise of judgment. By statute, classification as a conscientious objector is expressly conditioned on the registrant's claim being 'sustained by the local board.' 50 U.S.C. App. § 456(j) (1964 ed., Supp. III)."

393 U.S. at 258, 89 S.Ct. at 426. To me, Fein's claim falls squarely within the *Oestereich* exception.

In *Oestereich, Breen* and this case, the registrant challenges a procedure unauthorized by statute, while claiming that the regulation deprives him of a right based on higher authority.[2] The difference, which I do not deem significant, is that in *Oestereich* the conflict posed was between a board regulation—the delinquency provision—and a statutory command, the ministerial exemption. Here, the regulation establishing appellate procedures arguably conflicts with the due process clause of the Constitution, surely an a fortiori case for preinduction review. In neither *Oestereich, Breen,* nor this case are there any discretionary determinations of the system involved, nor are there any factual inquiries required. See Bucher v. Selective Service System, 421 F.2d 24, 27 (3 Cir. 1970) ("The Section bars pre-induction judicial review only where there is a challenge to the System's resolution of factual questions in the classification or processing of a draft registrant"). In all these cases, the System acted in reliance on a purportedly valid regulation, in such a way as to deny the registrant a firmly established right. Since I would find that the *Oestereich* exception reaches Fein's case, I would hold it not barred by Section 10(b) (3).

If the *Oestereich* exception is to be read narrowly, so as to turn "on the certainty with which the reviewing court can determine that the registrant would prevail on the merits if there were such judicial review of his classification," Breen v. Selective Service Local Bd., 396 U.S. 460, 468, 90 S.Ct. 661, 666, 24 L.Ed.2d 653 (1970) (Harlan, J., concurring), I would recognize a third exception into the section. This exception would permit preinduction review of claims, such as Fein's, that "the very statutes or regulations which the Board administers are facially invalid." Oestereich v. Selective Service System, 393 U.S. at 240, 89 S.Ct. at 418, 21 L.Ed.2d 402 (Harlan, J., concurring). In *Oestereich* the court showed itself willing creatively to construe Section 10(b) (3); I think that the facts of this case require another exercise of construction here.

I do not believe that Congress, even if it so intended, could by a provision such as Section 10(b) (3) deprive the federal courts of their power to hear allegations that a governmental agency has denied a

---

2. The Selective Service Acts themselves are silent about what procedures are to be followed on appeal; the only instructions are that appeals are authorized and are to be taken "in accordance with such rules and regulations as the President may prescribe." 50 U.S.C. App. § 460 (b) (3). On the effect of such a delegation generally, see Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

citizen procedural due process before the registrant is in custody. See 393 U.S. at 243 n. 6, 89 S.Ct. 414. My reading of the section and of its legislative history convinces me that Congress had no such intention. Of course, it is our duty to construe federal statutes, wherever possible, to sustain their constitutionality.[3] So, faced with the alternatives of a difficult inquiry into the section's constitutionality or a saving construction consistent with Congress' intent and the statute's clear wording, I would recognize another exception to the section to permit claims that an authorizing statute or board regulation is invalid because it is contrary to the Constitution.

My brothers, however, would read the Supreme Court's one sentence, per curiam affirmance in Boyd v. Clark, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511(1969), on the basis of Clark v. Gabriel, to foreclose this exception. In my view, *Boyd* is completely distinguishable. The petitioners in *Boyd,* four college-age youths who alleged they could not afford to attend college, sought to challenge the constitutionality of student deferments on equal protection and due process grounds. Without reaching the effects of Section 10(b) (3), the three-judge district court dismissed on the ground that the case was not ripe for adjudication since none of the petitioners had yet been called for induction. 287 F. Supp. 561 (S.D.N.Y.1968).[4]

The reasons for the rule are sound. Since the registrant may never be called, the rule serves to protect the system "from becoming entangled in litigation which may prove unnecessary." Boyd v. Clark, 287 F.Supp. at 564. Al-
though this rule predates Section 10(b) (3), Congress obviously intended that it be codified therein. See Senate Rep. No. 209, 90th Cong., 1st Sess. (1967), 1967 U.S. Code Cong. & Admin. News 1308; National Student Ass'n v. Hershey, 134 U.S.App.D.C. 56, 412 F.2d 1103, 1107 (1969).

In terms of Clark v. Gabriel petitioners in *Boyd* stood vis-a-vis their local boards in an unsettled position, as their boards might have to make several discretionary decisions, involving "a determination of fact and an exercise of judgment," Clark v. Gabriel, 393 U.S. at 258, 89 S.Ct. at 426, before issuing orders to report. For example, the Board might be asked to consider new requests for exemptions or deferments, which of course involve discretion. Even determining the order of call is heavily tinged with discretion, as the local board has extensive powers to alter the order as between registrants with I–A status. See 32 C.F.R. §§ 1631.7, 1632.2; United States v. Weintraub, 429 F.2d 658 (2d Cir., June 23, 1970); Green v. Local Board No. 87, 419 F.2d 813 (8th Cir. 1970).

In affirming *Boyd* on the basis of Clark v. Gabriel, it seems to me that the court looked not to the nature of the issue presented—which, like Fein's claim, was solely a question of law based on a constitutional challenge—but to the fact that petitioners there had not reached a position of finality within the system. To allow suits before a notice of induction is received would create exactly the sort of " 'litigious interruptions of procedures to provide necessary military manpower' which Congress sought to

3. See, e. g., Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932):
"When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."
See also United States v. Seeger, 380 U.S. 163, 188, 85 S.Ct. 850, 13 L.Ed.2d 733

(1965) (Douglas, J., concurring) ; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

4. As an alternative grounds for dismissing the action, the court held that the jurisdictional amount requirement of 28 U.S.C. § 1331 had not been met. In affirming, the Supreme Court specifically avoided this question. See part II *infra.*

prevent when it enacted § 10(b) (3)," Clark v. Gabriel, 393 U.S. 256 at 258, 89 S.Ct. at 426 (quoting Sen. Russell). As Fein has been ordered to report, Boyd v. Clark has no relevance to this case.

## II. *Jurisdictional Amount*

Having found that Fein's action was barred by Section 10(b) (3), neither Judge Blumenfeld nor the district court reached the question of whether Fein's allegation that more than $10,000 was in controversy in the present action satisfied the requirements of 28 U.S.C. § 1331 (1964). My brother Hays, however, advances jurisdictional amount as a second ground for affirming the judgment below, and with this I disagree.

Judge Hays, arguing from the position he expressed in his opinion in Boyd v. Clark, 287 F.Supp. 561 (S.D.N.Y. 1968), begins with the proposition that the amount in controversy must be reasonably capable of monetary valuation. He then would find the jurisdictional amount here unsatisfied even though Fein was never allowed to prove his allegation, so his second proposition must be that because the value of the rights denied is inherently incapable of valuation, a registrant can never satisfy Section 1331. Any such per se rule, however, has recently been rejected by this court. In Berk v. Laird, 429 F.2d 302 (1970), we held that a soldier who alleges that he is being unconstitutionally ordered into a war zone has met the requirements of Section 1331, since the allegedly unconstitutional action of the government might lead directly to his suffering serious injury or death.

*Berk* demonstrates that when traversing a jurisdictional allegation, the defendant has a heavy burden. Moreover, the Supreme Court has made it clear that

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless

the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Although Fein seeks an injunction, not money damages, the same rule applies, with the inquiry looking to "the value of the right to be protected or the extent of the injury to be prevented." C. Wright, Federal Courts, § 34, at 116 (2d ed. 1970). For all that appears at this stage, Fein's allegation may rest on a good faith belief that service will result in monetary loss: he may be deprived of several years lucrative private practice or an opportunity for further, specialized training which will permit him to earn more later in his career. In the absence of bad faith or a legal certainty that the allegation is groundless, we must credit the claim. Fein certainly made his allegation in good faith, and in light of Berk v. Laird it cannot be said that as a "legal certainty" the dollar value of what he will lose if illegally drafted is not at least $10,000.

Further, I think that we are required to give the most liberal possible readings to jurisdictional allegations in cases such as this. See Murray v. Vaughn, 300 F.Supp. 688, 694 (D.R.I.1969); Moylan v. Laird, 305 F.Supp. 551, 553 (D.R.I. 1969); Walsh v. Local Board No. 10, 305 F.Supp. 1274, 1276 (S.D.N.Y.1969). For if the $10,000 requirement of Section 1331 closes the doors of the federal courts, petitioners complaining of unconstitutional acts by the Selective Service System will have nowhere to go for relief. Mandamus under Section 1361 is rarely available,[5] the Selective Service System itself has neither the competence nor the power to pass on the constitutionality of procedures mandated by

5. Compare Feliciano v. Laird, 426 F.2d 424 (2 Cir., April 16, 1970), with United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2 Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969).

presidential regulations, and in this context, the concurrent jurisdiction of state courts is highly questionable. See Comment, Draft Reclassifications for Political Demonstrators—Jurisdictional Amounts in Suits Against Federal Officers, 53 Corn.L.Q. 916, 926–929 (1968).

Since Fein clearly can sustain his jurisdictional allegation, I need not consider the case of a poor man who stands to lose nothing but his most precious personal liberties if the unconstitutional actions of the federal government are beyond the reach of the courts. But if that case ever comes before us, I have grave doubts that the old rule requiring the claimed deprivation be capable of monetary valuation would long endure.

### III. *The Merits*

Under the regulations, the State Director may appeal any classification of the local board at any time. Section 1626.1. He may attach to his appeal a statement specifying the grounds for his appeal. Section 1626.12.[6] In reviewing the appeal, the Appeal Board has the following warrant:

> In reviewing the appeal and classifying the registrant, the appeal board shall not receive or consider any information other than the following:
>
> (1) Information contained in the record received from the local board.
>
> (2) General information concerning economic, industrial, and social conditions.

Section 1626.24(b). Apparently, it also may consider the information contained in the appellant's statement. If he

deems the matter to be "in the national interest or necessary to avoid an injustice," the State Director may appeal any determination of the Appeal Board to the Presidential Appeal Board. Section 1627.1.[7]

Fein claims these procedures violate due process in that (1) they do not require that the registrant be notified of the reasons for appeal advanced by the State Director; (2) no statement of the reasons for the Appeal Board's decision is required; and (3) the registrant-appellee is given no chance to. submit evidence, information or arguments to the Appeals Board.

Fein's first claim—that when the State Director, as appellant, chooses to exercise his right under Section 1626.12 to submit a statement, the registrant must be given a copy and be provided an opportunity by the Appeals Board to offer a rebuttal—is unquestionably correct. See United States v. Cummins, 425 F.2d 646 (8 Cir. 1970); Wiener v. Local Board No. 4, 302 F.Supp. 266 (D. Del.1969). In Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1965), the Supreme Court unequivocally stated that at least so much is required by minimum notions of due process. There, the registrant was not shown a Department of Justice recommendation on his request for conscientious objector status.[8] Reversing his conviction the Court noted:

> [A] registrant [must] be given an opportunity to rebut this recommendation when it comes to the Appeal Board, the agency with the ultimate responsibility for classification.

---

6. Section 1626.12 provides that:
   "The person appealing may attach to his appeal a statement specifying the matters in which he believes the board erred, may direct attention to any information in the registrant's file which he believes the local board has failed to consider or to give sufficient weight, and may set out in full any information which was offered to the local board and which the local board failed or refused to include in the registrant's file."

7. The regulations provide that if there has been at least one dissent at the state level, the registrant himself may appeal. Section 1627.3. Here, however, the state board had reversed Fein's classification unanimously, and the State Director took an appeal for the registrant.

8. This procedure is no longer in effect, having been repealed by the Military Selective Service Act of 1967. 50 U.S.C. App. 456(j) (1964), repealed by P.L. No. 90-40, § 1(7), 81 Stat. 100 (1967).

348 U.S. at 412, 75 S.Ct. at 412. The State Director's statement on appeal, which may refer to any information on the registrant's file "which [the person appealing] believes the local board has failed to consider or to give sufficient weight," is indistinguishable from the Justice Department's recommendation under the formal procedure.

Here, however, the State Director by affidavit stated that he did not exercise his option to append a statement to his notice of appeal; rather his letter to the Appeal Board noted only that in his opinion Dr. Fein did not qualify for I–O status and that his opinion was based on information in Fein's file. In this posture, Fein's argument must be that due process compels the State Director to frame the issues on appeal or, in the alternative, that registrant-appellee be given an opportunity by the Appeal Board to support the local board's decision. As to the first, the government might convincingly argue that since the Appeal Board hears and decides each case *de novo*, if the appellant-Director does not choose to frame the issues, the registrant is not at any disadvantage.

Fein's alternative contention seems far stronger. Under the regulations, Fein, as appellee, has no right to submit anything in support of the classification below. Certainly, it would be helpful to the Board if the registrant could submit a short statement which marshals the evidence in support of his classification. Fein apparently sought permission to file such a statement with the Appeal Board, but received no response to his inquiry. If the State Director can submit a statement to support his appeal, I think fundamental fairness requires that similarly the registrant-appellee be per-

mitted to be heard in support of the classification he has received.

Fein also argues that the Appeal Board's practice of refusing to give reasons when reversing a classification favorable to the registrant also violates due process. We have recently held that, at least when the registrant appeals, due process is not violated as long as "[t]here was sufficient evidence in the file for appellant to determine the basis for the denial of his claim." United States v. Morico, 415 F.2d 138, 139, 143 (2 Cir. 1969), rev'd on other grounds, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970). When, however, it is the State Director who appeals, several considerations lead me to conclude that a different standard must obtain.

First, the Appeal Board is empowered by the regulations to take cognizance of "general information concerning economic, industrial, and social conditions." Section 1626.24(b). This is an unsual provision, going well beyond the confines of judicial notice. See Preliminary Draft, Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 2–01 (March 1969).[9] Further, the registrant is not informed that the Board is in any way depending upon outside information in reaching a decision nor is he given a chance to rebut its accuracy or relevance. Although our review of a draft classification is tightly proscribed to "any basis in fact," the basis in fact must either be within the four corners of the file, see United States v. Abbott, 425 F.2d 910 (8 Cir., 1970) or the registrant must have been informed of any outside information which is to be considered before the Board decides and given a chance to rebut.

---

9. The Draft Rule imposes strict controls on judicial notice:

 "(b) Kinds of Facts. A judicially noticed fact must be either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be ques-

tioned, so that the fact is not subject to reasonable dispute."
Rule 2–01(b). Further, provision must be made for challenges:
 "(e) Opportunity To Be Heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter to be noticed."
Rule 2–01(e).

To my mind, the use of such information should be tightly circumscribed. Not only may this information, gathered from well-neigh any source and unchecked by any sort of rebuttal, be simply wrong, see Nevarez Bengoecha v. Micheli, 295 F.Supp. 257 (D.P.R.1969), but it might lead to wholly invalid inferences.[10] To prevent such misinformation, I would require the Appeal Board either to disclose in advance any "general information" it thinks relevant and give the registrant a chance to rebut or else positively to disclaim any such reliance.

Second, I note that several circuits have now adopted a rule requiring that when a registrant establishes a prima facie case for conscientious objector status, the local board and the Appeal Board must state their reasons for denying the request. In United States v. Haughton, 413 F.2d 736 (9 Cir. 1969), the Ninth Circuit in reversing a conviction of a conscientious objector for failure to report, stated that

"Inconsistent statements of actions or a finding of insincerity may support the denial of conscientious status. The local board, however, must state the reasons for the denial of a requested classification when a registrant has 'met the statutory criteria' for that classification or * * * has placed himself 'prima facie within the statutory exemption.' Otherwise a court cannot determine whether a board's

denial of a requested classification was based on a belief that the registrant's statements, even if true, did not entitle him to the classifications, or on the reasonable disbelief of certain allegations necessary to the registrant's prima facie case."

413 F.2d at 739 (citations omitted). Accord, United States v. Broyles, 423 F. 2d 1299 (4 Cir., March 19, 1970) (en banc).

Whether or not the local board must state reasons whenever a prima facie case is established, see Morico v. United States, *supra,* I think it clear that the Appeal Board must do so when the registrant has been granted I–O status below. If in defense to a criminal prosecution for refusal to submit to induction Fein obtains judicial review of this decision, the court would be limited to the "any basis in fact" standard. This means that we would search his file to find any rationale which would support the Appeal Board's decision. In the usual case, where both bodies have rejected the registrant's claim, perhaps this approach is adequate; in any case, it is settled law that our review is so limited. But when the local board has found that the registrant is sincere in his beliefs and that his beliefs meet the statutory criteria, I think a search through the file for any rationale to support the Appeal Board is impermissible. Although the Appeal Board is nominally superior to the local board, I cannot see

10. The possibility of this latter sort of error is strong in this case. I note that Fein, in his Selective Service Form 150, stated that while an intern at a highly respected Cleveland hospital, he voluntarily chose to live in the Cleveland ghetto and contributed the very little free time he had to a neighborhood free clinic. The clinic was run by the Students for a Democratic Society. Can any court say with assurance that the Appeal Board may not have seized upon this fact and read it out of context against Fein, under its license to consider "general information about * * * social conditions?"

Even if it be assumed that Fein belonged to SDS and that an inference

going to the sincerity or content of a conscientious objector claim could be drawn from the fact of active membership, I am certain that the New York State Appeal Board has no knowledge whatsoever of the principles and ideology of an SDS chapter in Cleveland more than four years ago. It goes without saying that before any inferences may be drawn, there would have to be positive proof that these tenets disqualified a subscriber from conscientious objector status, that Fein knew these tenets, and that he affirmatively embraced them. See, e. g., Law Students Civil Rights Research Council, Inc. v. Wadmond, 299 F.Supp. 117, 131 (S.D.N.Y.1969), prob. juris. noted, 396 U.S. 999, 90 S.Ct. 560, 24 L.Ed.2d 492 (1969).

**388**

that its judgment, without the benefit of an interview with the registrant, is to be preferred unless accompanied by an explanation. If it does not agree with the local board, it must state in what ways it disagrees. Otherwise, reviewing courts—as both the Fourth and Ninth Circuits have found—are blind to potential mistakes of law made by the Appeal Board in the difficult area of conscientious objector classifications.

Thus, when the State Director appeals, due process requires: first, that the registrant be given a copy of any statements the State Director submits on appeal and then be given a chance to respond; second, that the registrant be given the opportunity to submit a statement in support of his classification; third, that the Appeal Board positively disclaim any reliance on "general information" or, if it has so relied, give the registrant ample notice of the information it thinks relevant and a chance to rebut; and fourth, the Appeal Board state the rationale for any decision which reverses the local board.

I would reverse the judgment of the district court and remand with instructions that the injunction Fein seeks should issue.