Jaroslav SEDIVY

v.

**Elliot L. RICHARDSON, Secretary of Defense of the United States of America, et al., Appellants.**

No. 72–2065.

United States Court of Appeals,
Third Circuit.

Argued June 21, 1973.

Decided Sept. 26, 1973.

Harlington Wood, Jr., Asst. Atty. Gen., Herbert J. Stern, U. S. Atty., An-

thony J. Steinmeyer, Walter H. Fleischer, Attys., Dept. of Justice, Civil Division, Washington, D. C., for appellants.

Alexander D. Lehrer, Anschelewitz, Barr, Ansell & Bonello, Asbury Park, N. J., for appellee.

Before VAN DUSEN, ALDISERT and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

We are called upon to review the propriety of a permanent injunction issued by the district court, a federal civilian court, which prohibits the trial of an army sergeant by court-martial on the theory that the military court lacked jurisdiction under O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The Secretary of Defense, the Secretary of the Army, and the court-martial's convening authority, a general officer, have appealed.

A general court-martial had been convened to try Army Sergeant First Class Sedivy for possession of amphetamines and marijuana in violation of Articles 92 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934.[1] By the terms of the permanent injunction issued by the district court, the military authorities were enjoined from proceeding against Sedivy on these charges. The district court made findings of fact, drew legal conclusions therefrom, and held that Sedivy's conduct was not service connected, and, therefore, under O'Callahan the military court lacked jurisdiction to try him.

The military prosecution emanated from a December 10, 1971, raid on Sedivy's off-post house trailer. Civilian and military law enforcement officials conducted the raid, acting pursuant to a search warrant issued by a New Jersey state judge. The authorities found a quantity of amphetamines and marijuana on the premises and arrested Sergeant Sedivy and three other enlisted men attached to Fort Monmouth, New Jersey. At that time Sergeant Sedivy served as acting first sergeant of the 241st Military Police Company and was the senior non-commissioned officer of that unit.[2] The threshold inquiry concerns the authority of the district court to find the facts and reach the legal conclusions on the O'Callahan issue.

## I.

We immediately notice an issue neither argued nor briefed here or in the district court. It was incumbent upon Sergeant Sedivy to assert a claim cognizable under the general federal question jurisdictional statute, 28 U.S.C. § 1331, with the prerequisite $10,000 amount in controversy. Cf., Spock v. David, 469 F.2d 1047 (3d Cir. 1972). This he did by appropriate averments in both the First and Fourth Counts of his complaint. As the concurring opinion indicates, the appellants filed no answer, but in a brief colloquy at trial their counsel refused to stipulate to the court's jurisdiction. It cannot thus be said that the question of jurisdiction was properly traversed by a pleading or by a motion under F.R.Civ.P. 12(b)(1). As was the case of the trial court in Spock, "[t]he district court assumed that jurisdiction of the federal court was not in issue." "Since as the record of the district court comes before us the allegation of jurisdictional amount remains untraversed, . . . we cannot say as a legal certainty that [Sedivy] would never be able to establish [his] jurisdictional amount claim." Spock v. David, supra, 469 F.2d at 1052. Although the jurisdiction averments were not traversed at trial, we are permitted to raise the question sua sponte. "An

---

1. Article 134, 10 U.S.C. § 934 has been declared unconstitutional. Levy v. Parker, 478 F.2d 772 (3d Cir. 1973).

2. The Army's Article 32 investigation discloses that arrested with Sedivy were Specialists Clonnie W. Adkins and Michael Salud and PFC Joseph M. Lunt. Specialist Kenneth E. Hinson, assigned to Sedivy's MP Company, arrived on the premises while the raid was in progress.

objection to the adjudicatory power of a tribunal may generally be raised for the first time at any stage of the litigation. *See, e. g.,* Flast v. Cohen, 392 U.S. 83, 88 n.2, [88 S.Ct. 1942, 20 L.Ed.2d 947] (1968); United States v. Griffin, 303 U. S. 226, 229, [58 S.Ct. 601, 82 L.Ed. 764] (1938); Fortier v. New Orleans National Bank, 112 U.S. 439, 444, [5 S.Ct. 234, 28 L.Ed. 764] (1884)." Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973) (Marshall, J., dissenting) (footnote omitted). Because the very nature of this action presents an arguable question whether the jurisdictional amount could be satisfied, this is the type of case most appropriate for factual findings relating to subject matter jurisdiction. Nevertheless, we find it unnecessary to remand for such findings, first, because we are not required to, Spock v. David, *supra,* and, second, because of the view we take of these proceedings. For the guidance of the district courts, we emphasize the desirability to find jurisdictional facts in all cases arising under the general federal question statute, 28 U.S.C. § 1331, or the diversity statute, 28 U.S.C. § 1332, Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971). It is the Congressional mandate to restrict federal jurisdiction in these areas and it is incumbent upon the courts to implement this mandate.

## II.

The precise question we address is whether the federal civilian courts may prevent absolutely the military from finding the facts and determining whether they have jurisdiction under *O'Callahan.* The Constitution specifically provides for military punishment of military related offenses, Article 1, § 8, cl. 14; amend. V. ". . . Congress, in the exercise of its power to 'make Rules for the Government and Regulation of the land and naval Forces,' has never given . . . [the Supreme] Court appellate jurisdiction to supervise the administration of criminal justice in the military. When after the Second World War, Congress became convinced of the need to assure direct civilian review over military justice, it deliberately chose to confide this power to a specialized Court of Military Appeals, so that disinterested civilian judges could gain over time a fully developed understanding of the distinctive problems and legal traditions of the Armed Forces." Noyd v. Bond, 395 U.S. 683, 694, 89 S.Ct. 1876, 1883, 23 L.Ed.2d 631 (1969) (footnote omitted).

If the Supreme Court articulates such a rule relating to the exercise of appellate jurisdiction over military court-martial matters, it would seem *a fortiori* that the inferior Article III courts are precluded from injunctive interference with the trial process of a military court. Civilian federal courts have approached ongoing courts-martial gingerly, and generally only through the means of federal habeas corpus.[3]

■ We recently have had occasion to observe that federal habeas corpus preserves the jurisprudential integrity of the military system, because federal habeas corpus, an inquiry into "detention *simpliciter,*" is not a direct review of a state or military court judgment:

Initially, it is necessary to identify the limited contours of a civilian court's jurisdiction when presented with a habeas corpus petition from a federal prisoner whose incarceration was ordered by a court-martial. Our statement of this issue is deliberate, for we avoid the imprecise label "review." Title 10 U.S.C. § 876 provides that military criminal proceedings shall be "final and conclusive," and "binding upon all departments, courts, agencies, and officers of the United States." That is, as in the case of petitions for habeas corpus filed by state prisoners under 28 U.S.C. § 2254, where there is no jurisdiction to review the state *judgment,* here there can be no review of the final *judg-*

---

3. *But see* Councilman v. Laird, 481 F.2d 613 (10th Cir., 1973), discussed in footnote 5, *infra.*

*ment* of the court-martial. Naturally, however, a federal court has jurisdiction to examine state prisoner habeas corpus cases, and the basis of this jurisdiction was made clear in Fay v. Noia, 372 U.S. 391, 430–431, [83 S.Ct. 822, 844, 9 L.Ed.2d 837] (1963): "The jurisdictional prerequisite is not the judgment of a state court but detention *simpliciter*. . . . Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner. Medley, Petitioner, 134 U.S. 160, 173, [10 S.Ct. 384, 388, 33 L.Ed. 835]." Thus the federal court inquiry into "detention *simpliciter*" is not, jurisprudentially speaking, a review of the state judgment, but an inquiry into whether the constitutional rights of the prisoner were properly vindicated in the proceedings which caused his detention.

Levy v. Parker, *supra*, 478 F.2d at 779. (footnote omitted)

Even under habeas corpus, the opportunity for its exercise is strictly contained. "Gusik v. Schilder, 340 U.S. 128, [71 S.Ct. 149, 95 L.Ed. 146] (1950), established the general rule that habeas

corpus petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain." Noyd v. Bond, *supra*, 395 U.S. at 693, 89 S.Ct. at 1882.[4]

### III.

Because our issue is tightly constrained, it is important to emphasize what is not before us. This is not habeas corpus. This is not an inquiry into the present detention of a military prisoner following a court-martial adjudication. Noyd v. Bond, *supra*; O'Callahan v. Parker, *supra*; Levy v. Parker, *supra*; Cole v. Laird, 468 F.2d 829 (5th Cir. 1972). *See* Fay v. Noia, 372 U.S. 391, 430–431, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). What we have is an equity action preventing the military courts from making findings of fact or from interpreting the law pronounced by the Supreme Court. Our research has disclosed no reported case which has denied military courts the opportunity of finding facts relating to the exercise of their jurisdiction, except Moylan v. Laird, 305 F.Supp. 551 (R.I.1969), which we expressly decline to follow. The *Moylan* court appears to have ignored the Congressional limitations of 10 U.S.C. § 876 as well as every reported case on the subject.[5] Moreover, experi-

4. "Mr. Justice Douglas, for a unanimous Court [in Gusik v. Schilder, *supra*] explained some of the important reasons which require civilian courts to respect the integrity of the military court system that Congress has established:

'An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere. . . . The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts. If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless. The procedure established to police the errors of the tribunal whose

judgment is challenged may be adequate for the occasion. If it is, any friction between the federal court and the military or state tribunal is saved. . . . Such a principle of judicial administration is in no sense a suspension of the writ of habeas corpus. It is merely a deferment of resort to the writ until other corrective procedures are shown to be futile.' *Id.*, 340 U.S. at 131–132, 71 S.Ct. 151–152." Noyd v. Bond, *supra*, 395 U.S. at 693–694, 89 S.Ct. at 1882.

5. In Councilman v. Laird, *supra*, the court of appeals affirmed an injunction restraining the continuance of a court-martial proceeding after an O'Callahan issue was first presented and rejected by the presiding judge of the court-martial. The issue of prior exhaustion of military remedies was not discussed in the opinion; an examination of the briefs discloses that the point was not

ence discloses that ". . . review of military proceedings is characterized by the law-fact dichotomy articulated most precisely by the Court of Claims: issues of fact are not reviewable; issues of law are. . . . Shaw v. United States, 357 F.2d 949, 953–954, 174 Ct.Cl. 899 (1966). . . ." Levy v. Parker, *supra,* 478 F.2d at 783.

Statutory proscription and precedent aside, it is important to place the military court system in its proper prospective. "Military courts are legislative courts; their jurisdiction is independent of Art. III judicial power."[6] Parisi v. Davidson, 405 U.S. 34, 41 n.7, 92 S.Ct. 815, 819, 31 L.Ed.2d 17 (1972). They function in a procedural and jurisprudential environment tailored to meet military conditions. Justice Harlan addressed ". . . considerations [which] require a substantial degree of civilian deference to military tribunals. In reviewing military decisions, we must accommodate the demands of individual rights and the social order in a context which is far removed from those which we encounter in the ordinary run of civilian litigation, whether state or federal. In doing so, we must interpret a legal tradition which is radically different from that which is common in civil courts." Noyd v. Bond, 395 U.S. at 694, 89 S.Ct. at 1883.

■ Generally speaking, a service man must exhaust remedies within the military judicial system even before habeas corpus recourse may be had to a federal court. "Exhaustion in this context requires completion of all the steps of review provided within the military. . . . Prior to completion of this process, the civilian courts have not entertained petitions for habeas corpus. *See* Brown v. McNamara, 387 F.2d 150 (3d Cir. 1967). . . . Exhaustion of these administrative remedies generally seems appropriate under Professor Jaffe's analysis. There is reason to have the military develop and decide the disputed questions of fact; the military is theoretically part of a coordinate branch of government entitled to some deference. L. Jaffe, Judicial Control of Administrative Action 424–26 (1965)." McCormack, Federal Court Intervention in Military Courts—Interrelationship of Defenses and Comity, 6 Ga.L.Rev. 532, 553–54 n.89.

Justice Marshall has recently explained the exhaustion requirement within the military justice system:

"The exhaustion doctrine evolved in the context of collateral attack on state criminal proceedings. See, e. g., Ex parte Hawk, 321 U.S. 114, [64 S.Ct. 448, 88 L.Ed. 572] (1944); Ex parte Royall, 117 U.S. 241, [6 S.Ct. 734, 29 L.Ed. 868] (1886). It generally requires state petitioners to utilize available state court remedies before resorting to federal habeas corpus, and thus serves both to ensure the orderly functioning of state judicial processes, without disruptive federal court intervention, and to allow state courts to fulfill their roles as co-

---

raised. The sole question on appeal was whether the offense was "service-connected." Accordingly, the case has no precedential value for our purposes. See Bishop, Civilian Judges and Military Justice: Collateral Review of Court Martial Convictions, 61 Colum.L.Rev. 40 (1961); Weckstein, Federal Court Review of Courts-Martial Proceedings: A Delicate Balance of Individual Rights and Military Responsibilities, 54 Mil. L.Rev. 1 (1971).

6. In a perceptive analysis, Judge Edward D. Re, formerly Professor of Law at St. John's Law School, has written: "Although courts-martials are not strictly a part of the judicial system of the United States since they

are not '. . . such inferior Courts as the Congress may from time to time ordain and establish,' they are, nevertheless, important *administrative military tribunals* to which far-reaching powers are entrusted. The fact that they are adjuncts of the executive power does not necessarily lead to the conclusion that they are '. . . simply *instrumentalities of the executive power,* provided by Congress for the President as Commander-in-Chief, to aid him in properly commanding the army and navy and enforcing discipline therein.' Winthrop, Military Law and Precedents 49 (2d ed. 1920)." Re, The Uniform Code of Military Justice, 25 St. John's L.Rev. 1, 9–10 (1951) (footnotes omitted.

equal partners with the federal courts in the enforcement of federal law, thus often eliminating the need for federal court action, and avoiding unnecessary friction between state and federal courts. These same considerations inhere in the context of collateral attack in federal court upon the judgments of military tribunals, which constitute a judicial system—a system with its own peculiar purposes and legal traditions—distinct from the federal judicial system much like the independent state judicial systems. Accordingly, this Court normally has required that military petitioners exhaust all available remedies within the military justice system. See Noyd v. Bond, 395 U.S. 683, 693, [89 S. Ct. 1876, 1882, 23 L.Ed.2d 631] (1969); Gusik v. Schilder, 340 U.S. 128, 131–132, [71 S.Ct. 149, 151–152, 95 L.Ed. 146] (1950)." Gosa v. Mayden, *supra*, 413 U.S. 665, 711, 93 S.Ct. 2926, 2953, 37 L. Ed.2d 873 (Marshall, J., dissenting) (footnotes omitted).[7]

We perceive the presence of no countervailing circumstances to necessitate a departure from the normal requirement of exhaustion of military remedies before recourse to federal civilian courts.[8]

---

7. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), was a federal habeas corpus challenge to the right of a military court to try a civilian. The proceeding was a direct challenge to the constitutionality of legislation purporting to give the military court jurisdiction. Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), was a habeas corpus challenge to the constitutionality of the application of Article 2(11) of the Uniform Code of Military Justice to the trial, in capital offenses, of civilian dependents accompanying members of the armed forces overseas. Similarly McElroy v. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L. Ed.2d 282 (1960), applied the same holding to the trial of civilians in non-capital offenses. Putting aside the procedural context in which these cases arose—each was federal habeas corpus—these three cases did not require a finding of what facts constituted the offense. Rather, each case turned on the civilian status of the relator.

8. Parisi v. Davidson, *supra*, does not undercut these principles. Although the Court used language which questioned the label "exhaustion," preferring "appropriate demands of comity," it does not appear that the Supreme Court is diluting the jurisprudential doctrine of exhaustion of remedies in another court system, considering how ingrained is this principle in federal collateral review of state criminal proceedings. Fay v. Noia, *supra*. The issue before this court—a civilian federal "court's direct intervention in a case arising in the military court system" —was not before the Court in *Parisi*. 405 U.S. at 41, 92 S.Ct. 815.

In *Parisi* the Court stated:

Although this argument, too, is framed in terms of "exhaustion," it may more accurately be understood as based upon the appropriate demands of comity between two separate judicial systems. Requiring the District Court to defer to the military courts in these circumstances serves the interests of comity, the respondents argue, by aiding the military judiciary in its task of maintaining order and discipline in the armed services and by eliminating "needless friction" between the federal civilian and military judicial systems. The respondents note that the military constitutes a "specialized community governed by a separate discipline from that of the civilian." Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842; Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146, and that in recognition of the special nature of the military community, Congress has created an autonomous military judicial system, pursuant to Art. I, § 8, of the Constitution. They further point out that civilian courts, out of respect for the separation-of-powers doctrine and for the needs of the military, have rightly been reluctant to interfere with military judicial proceedings.

405 U.S. at 40–41, 92 S.Ct. at 819. (footnotes omitted)

The concept of "exhaustion" in the context of the demands of comity between different judicial systems is closely analogous to the doctrine of abstention. For a discussion of the exhaustion and abstention doctrines in the federal-state context, see generally, C. Wright, Handbook of the Law of Federal Courts 186–188, 196–208 (2d ed. 1970).

405 U.S. at 40, n. 6, 92 S.Ct. at 819.

We must confess to a less than complete understanding how the doctrine of comity may properly apply to two court systems functioning under the same sovereign, since the doctrine is conceptualized on court systems of separate sovereigns. Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Justice Douglas observes:

Comity is "a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the

The military court system—including the general court-martial, the Army Court of Military Review, and the Court of Military Appeals—are required to follow the mandate of *O'Callahan* as further explicated in Relford v. Commandant, 401 U.S. 355, 91 S.Ct. 649, 28 L. Ed.2d 102 (1971).[9]

It is in the military court that Sergeant Sedivy may present the facts and the appropriate motion to oust military jurisdiction. Those tribunals may freely make the necessary factual determinations and draw conclusions from all the evidence present, including but not limited to the nature of the charges lodged against Sergeant Sedivy, that the seizure of the incriminating evidence was pursuant to a civilian court order, that the incident occurred off-base, that it did not occur in time of war, that Sergeant Sedivy was not on duty, that he was the ranking non-commissioned officer of the Fort Monmouth Military Police Company, that a sign on his house trailer announced that he was a first sergeant in the military police, that arrested with him were three Fort Monmouth enlisted men of inferior rank, that a fourth enlisted man under his command arrived at his trailer while the raid was in process.

■ Accordingly, we conclude that it was error for the district court to have made the fact findings in the first instance, to have decided the *O'Callahan* issue, and to have issued the injunction pursuant to a decision on the merits. The district court should have required the appellee to exhaust remedies in the military court system and not have interfered with its orderly process.

## IV.

■ Although we recognize that a jurisprudential premise of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971), is the recognition of comity between courts of two co-equal sovereigns, federal and state, a persuasive case can be made that the doctrine

courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, [70 S.Ct. 587, 598, 94 L.Ed. 761]. But the Pentagon is not yet sovereign. The military is simply another administrative agency, insofar as judicial review is concerned. Cf. Comment, 43 S. Cal.L.Rev. 356, 377–378. While we have stated in the past that special deference is due the military decision-making process, Gusik v. Schilder, 340 U.S. 128, [71 S.Ct. 149, 95 L.Ed. 146,] this is so neither because of "comity," nor the sanctity of the Executive Branch, but because of a concern for the effect of judicial intervention on morale and military discipline, and because of the civilian judiciary's general unfamiliarity with "extremely technical provisions of the Uniform Code [of Military Justice] which have no analogs in civilian jurisprudence," Noyd v. Bond, *supra*, at 696, 89 S.Ct. at 1884.
Parisi v. Davidson, 405 U.S. at 51, 92 S.Ct. at 825 (concurring in the result).
Perhaps the concept of "exhaustion" in the context of district court-military court relations is more closely analogous to the doctrine of primary jurisdiction. "The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is

concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433, [60 S.Ct. 325, 331, 84 L.Ed. 361]." United States v. Western Pac. R. Co., 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

9. Indeed, the Supreme Court has recognized that the Court of Military Appeals has some power to issue writs over military courts of inferior jurisdiction, although recognizing some uncertainty as to whether that court has original power to issue a writ of habeas corpus. Parisi v. Davidson, *supra*, 405 U.S. at 44, 92 S.Ct. 815.

applies equally to mutual non-intervention by two coordinate courts of the same sovereign.[10] It can be contended that the equity postulates of *Younger* bade fealty to a traditional principle that one court system should not intrude when another court system holds out hope of an adequate remedy.[11] Moreover, here, as emphasized in *Younger*, there appears to be no barrier to the assertion of Sergeant Sedivy's constitutional defense in a single criminal proceeding. So conceptualized, we arrive at the same result. Whether it be said that Sergeant Sedivy failed to exhaust avenues for relief in the military court system, or that he had available an adequate remedy at law, he was not entitled to the equitable relief granted by the district court.

The judgment of the district court will be reversed and the proceedings remanded with a direction to vacate the injunction and dismiss the complaint.

ADAMS, Circuit Judge (concurring):

I concur with the result reached by the majority but feel constrained to add that the question whether the $10,000 "matter in controversy" requirement of 28 U.S.C. § 1331 is, or must be, met in this type case deserves, at some point, more serious consideration than it has been given thus far by the federal courts.

Sedivy's complaint alleges, among other things, violations of his Fifth and Sixth Amendment rights and a matter in controversy exceeding $10,000, exclusive of interest and costs. He sought temporary, preliminary, and permanent restraint against the military authorities, and damages consisting specifically of counsel fees and costs of suit totaling $12,500. For reasons unclear in the record, the Government did not file an answer to Sedivy's complaint. But an indication of dispute as to the jurisdiction of the district court to hear the case consisted of a brief colloquy between the court and counsel at trial, during which Government counsel declined to stipulate to the court's jurisdiction.[1]

1331(a) provides as follows:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

To meet this $10,000 requirement, the sum asserted by a plaintiff controls unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount."[2] Sedivy's $12,500 claim consists of costs, expressly excluded by the statute, and legal fees, traditionally not awarded by federal courts unless their recovery is provided for by statute or contract.[3] It appears, therefore, that Sedivy's claim, at least at this point of the litigation, does not satisfy § 1331.[4] The fact that the Government

---

10. ". . . ., American courts are heirs to a long standing principle of the common law which finds its historical foundation in the forbearance through which courts exercising coordinate jurisdiction in the name of a single sovereign refrained from interfering with the process of one another and, thereby, direct conflicts with each other were avoided. The utility produced by this concord was alone sufficient justification for its continued existence." Jennings v. Boenning & Co., 482 F.2d 1128 (3d Cir., 1973).

11. Darr v. Burford, *supra*, 339 U.S. at 204, 70 S.Ct. 587 (1950); Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390 (1884).

1. Transcript, pp. 4–5.

2. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

3. Wright, Federal Courts § 35 (2d ed. 1970). If a statute or contract provides for attorney fees, then such fees may be used in determining the amount in controversy. *Id.*

4. Sedivy's complaint sought to assert a cause of action based on false imprisonment. At oral argument his counsel adverted to pension benefits Sedivy risked losing if the military authorities were not enjoined. Had Sedivy linked a money claim to the false imprisonment charge, or set out in his complaint the

has not answered the complaint should not bind it to Sedivy's jurisdictional allegation, especially in light of the Government's specific refusal to stipulate jurisdiction at trial.

Furthermore, since the federal courts are courts of limited, not general, jurisdiction, it is incumbent on them to exercise utmost care that they do not act beyond the bounds set for them by Congress or the Constitution.[5] Even if the Government had stipulated as to jurisdiction, it remained the duty of the district court to satisfy itself that Sedivy's claim did not appear "to a legal certainty" to be less than $10,000.[6] Parties may not through the stipulation device confer jurisdiction on a federal court when jurisdiction does not otherwise exist.[7]

The majority asserts that Spock v. David[8] does not require a remand for jurisdictional findings. The *Spock* case differs from this case in three significant respects. First, in *Spock* there was no specific declination to stipulate, as there is here, to the district court's jurisdiction. Secondly, although some of Sedivy's constitutional rights arguably are at issue,[9] he does not claim that his First Amendment rights are implicated. The plaintiffs in *Spock*, on the other hand, sought an injunction against interference with rights applicable to freedom of speech and when First Amendment rights are allegedly abridged, courts are likely to be more generous in finding jurisdiction.[10] Finally, and probably most importantly, the *Spock*

case involved an appeal from a denial of a preliminary injunction. The Court recognized that the need for expedition at the preliminary hearing in First Amendment cases precluded detailed examination as to whether the "matter in controversy" requirement had been met. Such a determination, this Court reasoned, could be made at the final hearing:

> "The district court assumed that jurisdiction of the Federal court was not at issue, at least with respect to the *preliminary* injunction. In these circumstances it was understandable that no effort was made to introduce evidence directed specifically to the value of the claimed rights. This was, after all, not a final hearing, but a hearing on a motion for a preliminary injunction. Since as the record of the district court comes before us the allegation of jurisdictional amount remains untraversed, and we cannot say as a legal certainty that the *plaintiffs will never be able to establish their jurisdictional amount claim*, we must proceed on the same assumption as did the district court."[11] (Emphasis supplied)

The Court in *Spock* went on to indicate that there was a strong likelihood at a final hearing that the plaintiffs could meet the $10,000 requirement.[12] The case at hand is in a much different posture. After a hearing, the military authorities were *permanently* enjoined. There is no further proceeding in which the district court can consider fully the

amount of pension benefits that would be lost if the military prosecution were successful, he might have met the requirements of § 1331.

5. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." Ex Parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868).

6. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

7. *See* Mansfield, Coldwater & Lake Michigan Ry. v. Swan, 111 U.S. 379, 383, 4 S.Ct. 510,

28 L.Ed. 462 (1884); Fed.R.Civ.P. 12(h) (3).

8. 469 F.2d 1047 (3d Cir. 1972).

9. *See generally* Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L.Rev. 1362 (1953).

10. *Cf.* Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

11. 469 F.2d at 1052.

12. *Id.* at 1053.

jurisdictional issue. Unless there is a reversal by an appellate court, Sedivy will, in fact, never be called upon to meet the $10,000 requirement. In sum, *Spock* would appear to be inapposite.

If consideration of the jurisdictional problem ended here, I would be impelled to urge a dismissal of this case, since it does not appear from the record that the $10,000 requirement has been met. But the Supreme Court, in cases involving pre-induction challenge to the authority of local boards to draft particular individuals, has exhibited some willingness to overlook suspect allegations of amounts in controversy, decide the merits of the dispute, and *then* remand for a jurisdictional determination if the decision on the merits was in favor of the petitioner. The pre-induction challenge cases are somewhat similar to the present one in that the plaintiffs in both seek to enjoin imminent detention rather than delay their challenges to the detaining agencies' authority until those agencies have acted.[13]

In Oestereich v. Selective Service System Local Board No. 11,[14] a ministry student sought an injunction in a district court after a draft board had withdrawn his exemption. The Supreme Court held that the Government could not deprive a ministry student of his statutory exemption after he had turned in his registration certificate to the Government in protest of the Viet Nam War, even though the statute on its face precluded pre-induction judicial review of a registrant's classification. However, the Supreme Court, reversed and remanded to the district court "where petitioner must have the opportunity . . . to demonstrate that he meets the jurisdictional requirements of 28 U.S.C. § 1331." [15]

The approach to the jurisdictional question in *Oestereich* is troublesome. It would seem that if the district court in *Oestereich* lacked original jurisdiction under § 1331, the Supreme Court would also lack jurisdiction to reach the merits of the petitioner's claim. If this be so, it might logically be contended that the question of the district court's jurisdiction should have been addressed and determined in petitioner's favor before an appellate court could have appropriately reached the merits of petitioner's claim.[16]

In Fein v. Selective Service System Local Board No. 7,[17] the Supreme Court again addressed question whether a petitioner was entitled to pre-induction review without first determining whether § 1331 jurisdiction was properly invoked. There, the Court held that the petitioner had no right to pre-induction review and that this holding made it "unnecessary to consider in any detail" the § 1331 question.[18] Thus, it appears to be a developing practice by the Supreme Court to defer determination of the § 1331 question, at least in cases involving detention similar to that present here, until after deciding whether petitioner would be entitled to review vel non.

Although this approach might be considered inconsistent with the convention-

13. Sedivy was confined in the Fort Monmouth MP Station immediately after the discovery of narcotics in his housetrailer, and taken to the Fort Dix stockade the next day. His detention was not preceded by any hearing whatsoever.

14. 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

15. *Id.* at 239, 89 S.Ct. at 417.

16. The Supreme Court's remand in *Oestereich* for a jurisdictional determination seems especially puzzling in light of the district court's prior determination that "[t]he failure of jurisdiction of this court under 28 U.S.C. § 1331 appears on the face of the complaint for its failure to allege facts showing that the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs, or to show facts from which such jurisdictional requirement may be inferred." Oestereich v. Selective Serv. Sys. Local Board No. 11, 280 F.Supp. 78 (D. Wyo.1968).

17. 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972).

18. *Id.* at 377. The Supreme Court took this approach despite the fact that Judge Hays, concurring, and Judge Lumbard, dissenting, specifically reached the jurisdictional question in their opinions. Fein v. Selective Serv. Sys. Local Bd. No. 7, 430 F.2d 376, 380, 384–385 (2d Cir. 1970).

al jurisprudence that jurisdictional determinations be resolved prior to consideration of the merits, it does permit a court to avoid constitutional questions of the type suggested by Justice Harlan in a footnote in his concurring opinion in *Oestereich*.[19] There he asserts that "[i]t is doubtful whether a person may be deprived of his personal liberty without the prior opportunity to be heard by some tribunal competent fully to adjudicate his claims."[20] If a person is detained by any authority prior to hearing and is unable to bring suit in federal court because he cannot claim $10,000 in damages, then Justice Harlan's concern must be considered.[21] Admittedly, the availability of state court review and the federal writ of habeas corpus may remove the constitutional objections to the absence of § 1331 jurisdiction. But until the constitutional questions posed by Justice Harlan are briefed, argued and decided, they remain open.[22]

In reversing the district court here, we would appear to be following the Supreme Court's lead in *Fein*. There, as we do here, the Supreme Court found against the petitioner on the merits, thereby rendering a remand to the district court for a jurisdictional determination unnecessary.[23]

A decision that the § 1331 "matter in controversy" requirement was not met on the record before us would ordinarily require a dismissal. If, in a subsequent suit, Sedivy did successfully invoke § 1331 jurisdiction and the

district court then granted relief, we would be required to reverse because of the views enunciated by the majority regarding the merits of the controversy. Thus, by reaching the merits now, we may be conserving, in the long run, judicial resources.[24] Although we are following the Supreme Court's lead and possibly promoting the conservation of judicial resources, there nonetheless remains the perplexing, perhaps nagging, question whether we are being properly deferential to our limited role in the federal system.

---

19. 393 U.S. 233, 243–244, n. 6, 89 S.Ct. 414, 21 L.Ed.2d 402.

20. *Id.* at 243, n. 6, 89 S.Ct. at 419.

21. Justice Stewart, in response to Justice Harlan's suggestion that prehearing detention is unconstitutional, points out that the typical arrest situation involves just such prehearing detention. *Id.* at 249–250, 89 S. Ct. 414 (Stewart, dissenting).

22. *See* Fein v. Selective Serv. Sys. Local Bd. No. 7, 430 F.2d 376, 384–385 (2d Cir. 1970) (Lumbard, dissenting).

23. § 1331 jurisdiction by the district court would, in reality, serve no purpose. In contrast to the disposition in *Fein*, the Court

*found for* the petitioner on the merits in *Oestereich*, making a jurisdictional finding practical significance in terms of the ultimate result.

24. If, however, the majority's admonition to the district courts that it is important for them to be satisfied that they have jurisdiction under § 1331 before reaching the merits of the controversy should go unheeded, many cases may reach the federal courts that are not properly there. Of course, it would be our duty, at some point, to stem any such flow of litigation. It is arguable that a remand for a jurisdictional determination here would have a greater prophylactic effect than a mere admonition.