Raymond G. DeCHAMPLAIN, Plaintiff,

v.

John L. McLUCAS, Secretary of the Air Force, et al., Defendants.

Civ. A. No. 1863–73.

United States District Court, District of Columbia.

Nov. 13, 1973.

Leonard B. Boudin, Eric M. Lieberman, New York City, David Rein, Washington, D..C., for plaintiff.

Michael A. Katz, Asst. U. S. Atty., United States District Court, Washington, D. C., for defendants.

## MEMORANDUM: FINDINGS OF FACT AND CONCLUSIONS OF LAW

PARKER, District Judge.

The plaintiff, a noncommissioned officer in the United States Air Force seeks injunctive relief against the Secretary of the Air Force, the Chief of Staff, Department of the Air Force, the Judge Advocate General of the Air Force and certain officers of the Richards-Gebaur Air Force Base, Missouri. His complaint alleges that he is scheduled for trial on November 15, 1973 by a general court martial convened by the Commanding Officer, 1840th Air Base Wing, on various charges and specifications in violation of the Uniform Code of Military Justice (UCMJ), specifically, Article 81—conspiracy, Article 92—failure to obey a lawful general regulation, Article 134—the so-called "general article," 10 U.S.C. §§ 881, 892 and 934. Those charges relate to alleged espionage activities by the plaintiff in the summer of 1971 while stationed in Thailand. A prior conviction and sentence on the charges were set aside and rehearing authorized by the Air Force Court of Military Review, United States v. DeChamplain, ACM 21034, 46 CMR (Oct. 5, 1972). That tribunal found that plaintiff's involuntary confession was wrongfully introduced at the trial. The decision of the Court of Military Review was affirmed on appeal, United

States v. DeChamplain, 22 U.S. CMA 150, 44 CMR 150 (Feb. 16, 1973).

During the subsequent pretrial proceedings conducted pursuant to Article 39(a) UCMJ, 10 U.S.C. § 839(a), the presiding military judge rejected various objections made by defense counsel which are central to this litigation:

1. That the Article 134 specifications be dismissed based upon the recent decisions invalidating that provision as unconstitutional. Avrech v. Secretary of Navy, 477 F.2d 1237 (D.C.Cir.1973); Levy v. Parker, 478 F.2d 772 (3rd Cir. 1973); Hooper v. Laird, 482 F.2d 784 (D.C.Cir.1973).

2. That retained civilian defense counsel, Leonard B. Boudin, Esquire, be permitted complete access to certain classified documents for the purposes of copying and discussion with partners, associates as well as outside consulting experts. These documents which comprise the heart of the court martial charges, were allegedly transmitted by DeChamplain to foreign agents.[1] Substantial restrictions have been imposed upon Mr. Boudin's use of these documents. Copies would not be provided; examination could only take place in the presence of military authorities; no notes could be taken from the "secured" area; all notes taken would be reviewed by military officials to determine whether or not they must remain in the "secured" area; the classified information could not be viewed by or discussed with anyone except for one associate attorney and one secretary.[2]

3. That the Court martial proceeding be open fully to the public and the press during all phases, including the time when the classified documents are discussed.[3]

The plaintiff then raised these issues in a petition for Extraordinary Relief before the United States Court of Military Appeals. The petition was summarily denied, United States Court of Military Appeals, Misc. Docket 73–46, September 5, 1973. Complaining that these rulings by the military constitute serious deprivations of his constitutional rights to due process and fair trial, plaintiff now requests this Court to intervene in the military judicial process by enjoining the forthcoming court martial unless and until the alleged deficiencies are rectified.

On November 9, 1973 the matter came before the Court on plaintiff's motion for a preliminary injunction and the government's motion to dismiss. As to both motions, the government adopted a central position: that the posture in which the case is presented compels the Court to abstain from interfering with the court martial proceedings since the plaintiff has not exhausted the military remedies available to him through appellate review.

After full briefing and argument the Court concludes that the circumstances here presented are sufficiently compelling to warrant intervention and, in accordance with the Findings of Fact and Conclusions of Law set forth below, hereby preliminarily enjoins prosecution

---

1. Charges relating to certain classified documents, to which the military had sought absolute non-disclosure, have been dropped. The military had evidently chosen not to prosecute those charges rather risk being forced to disclose the documents on even a limited basis. The issue of access to documents, therefore, relates only to those upon which the Air Force is basing their case.

2. Civilian counsel, who is experienced in "espionage" trials, has expressed his desire to consult with and seek the advice of several experts in national security matters. The nature and contents of classified documents are crucial to establishing and defending

such charges. See e. g. Gorin v. United States, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488 (1941); United States v. Heine, 151 F. 2d 813 (2d Cir. 1945).

3. A fourth issue, not raised at the Article 39(a) pretrial hearings, has been introduced into this suit; that DeChamplain's military appointed judge advocate has been improperly refused permission to represent the sergeant in ancillary federal court proceedings. The Court, in reaching its decision, need not and will not rule upon this point, which counsel candidly admitted during oral argument as being tangential to the gravamen of the complaint.

of the pending court martial of the plaintiff.

■ It is well established, and plaintiff must concede, that generally a serviceman must first exhaust his military remedies before a federal court will interfere with court martial proceedings. Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); Sedivy v. Richardson, 3rd Cir., 485 F.2d 1115, decided September 26, 1973; Levy v. Corcoran, 128 U.S.App.D.C. 388, 389 F.2d 929 (1967). Accordingly, the government contends that plaintiff must first stand trial, which might result in acquittal, and then, if convicted, utilize the military appellate procedure before applying to this Court for relief. This rule is by no means inflexible and exceptions have been acknowledged. In *Noyd* upon which the government heavily relies, Mr. Justice Harlan noted that there may well exist situations which justify a claimant to seek vindication of his rights through the civilian courts without first utilizing the military appellate machinery, particularly when "the complainants raised substantial arguments denying the right of the military to try them at all." 395 U.S. 683, 696 n. 8, 89 S.Ct. 1876, 1884, 23 L.Ed.2d 631. See also Hemphill v. Moseley, 443 F.2d 322, 323 (10th Cir. 1971). Although *Noyd* held that the doctrine of exhaustion would control, that decision was at least partially based upon the reluctance to pass upon questions of military law for which the Court felt no expertise.[4]

This concern was also evidenced in the most recent case, Sedivy v. Richardson, *supra*. There, Sedivy had prevailed upon the district court to enjoin his pending court martial, claiming that the charges against him were not service-related and therefore the military lacked jurisdiction to try him. O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1863, 23 L.Ed.2d 291 (1969). In setting aside the order on grounds of failure to exhaust remedies the Third Circuit observed that the claims raised necessarily involved factual determinations and factors which could have and should have been acted upon in the first instance by the military.[5] However, the court significantly acknowledged that under compelling circumstances the exhaustion requirement could be dispensed with:

> "We perceive the presence of no countervailing circumstances to necessitate a departure from the normal requirement of exhaustion of military remedies before recourse to federal civilian courts." 485 F.2d at 1120.

■ The circumstances surrounding this case are such that unless this Court takes affirmative action Sergeant DeChamplain will be denied fundamental constitutional guarantees.

The matters raised in this litigation do not necessitate determinations which the military forum is best equipped to make. The issues are purely legal: whether the military has jurisdiction to try plaintiff for violations of a statute which stands unconstitutional under circumstances and conditions which may unduly impede his preparation and presentation of a sound defense. No compelling justifications have been presented which require this Court to defer consideration of these matters to the military.

### Article 134

The status of Article 134 is not uncertain at this time—it is unconstitutional.[6]

---

4. "Moreover, if we were to reach the merits of petitioner's claim for relief pending his military appeal, we would be obliged to interpret extremely technical provisions of the Uniform Code which have no analogs in civilian jurisprudence and which have not even been fully explored by the Court of Military Appeals itself. There seems little reason to blaze a trial on unfamiliar ground when the highest military court stands ready to consider petitioner's argument." 395 U.S. at 696, 89 S.Ct. at 1884.

5. Sedivy v. Richardson, supra, 485 F.2d at 1121.

6. The Supreme Court has agreed to review this issue. Secretary of Navy v. Avrech, 414 U.S. 816, 94 S.Ct. 64, 38 L.Ed.2d 48, 1973.

Avrech v. Secretary of Navy, *supra*; Levy v. Parker, *supra*; Hooper v. Laird, *supra*; Stolte v. Laird, 353 F.Supp. 1392 (D.D.C.1972). The military, however, has refused to accept this ruling, and, as evidenced by this suit, persists in prosecuting under the outlawed provision. See United States v. Unrue, No. 26,552 United States Court of Military Appeals, April 2, 1973, in which the nation's highest military tribunal, relying upon an 1858 Supreme Court decision which upheld Article 134, categorically refused to follow *Avrech*. It simply offends basic notions of fairness to require plaintiff to endure a possible lengthy court martial and further expect that appellate relief be sought in a tribunal which has clearly and summarily rejected the claims asserted. Indeed, at least two federal district courts have enjoined such proceedings based upon Article 134 specifications. McCahill v. Eason et al., 361 F.Supp. 588, Northern District of Florida, Pensacola Division, Final Order dated June 12, 1973; Waters v. Schlesinger et al., 366 F.Supp. 460, Northern District of Texas, Dallas Division, Temporary Restraining Order and Order to Show Cause, dated October 11, 1973. In *McCahill*, Chief Judge Arnow specifically found that in view of the *Unrue* ruling "[t]o require the petitioner to exhaust his military remedies would force him to undergo a useless ordeal." This Court finds that reasoning persuasive.

### Access To Documents And Conduct Of The Trial

Civilian defense counsel has argued that the severe limitations placed upon him and his staff will so seriously impede his ability to defend the charges as to deny DeChamplain a fair trial as guaranteed by the Sixth and Fourteenth Amendments.

 It has been held, and the government has offered no apparent resistance to the fact that a successful federal prosecution for espionage, under 18 U. S.C. § 793, violations of which are incorporated into the Article 134 charges against DeChamplain, must prove that dissemination of the particular information to a foreign power would cause injury to the United States and that the information had not otherwise been made public. See Gorin v. United States, 312 U.S. 19, 61 S.Ct. 429, 85 L. Ed. 488 (1941); United States v. Heine, 151 F.2d 813 (2d Cir. 1945). Clearly then, any vigorous defense of espionage charges requires counsel to be thoroughly familiar with the contents and nature of the documents which are central to the case and the prosecution must accordingly disclose the material to the defense. If, for the sake of maintaining the confidentiality of sensitive documents, it is unwilling to do so, it must be prepared to forego trial. The government must be put to the choice. It may not bring serious charges against an individual and at the same time withhold crucial evidence from the accused. See United States v. Andolschek, 142 F. 2d 503, 506 (2d Cir. 1944), wherein Judge Learned Hand counseled: "[t]he government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them." Presumably in observance of that principle, the military has chosen not to introduce into evidence 15 documents produced at plaintiff's first court martial. However, as to nine others, which will comprise the core of the case against plaintiff, the military authorities have afforded Mr. Boudin only limited access. This Court can readily envision these restrictions, which have been earlier delineated, as effectively handcuffing retained civilian counsel. The Air Force has not come forward with any convincing justification, military or otherwise, for the imposition of these limitations.[7] This Court does not mean to imply that the military is powerless to obtain protective orders designed to prevent unwarranted disclosure of sensitive material, but the condi-

---

7. Military appointed counsel has been permitted to review these documents but is prohibited from discussing them with the civilian defense team.

tions demanded by the military are clearly excessive and abridge plaintiff's right to a fair trial.[8]

 As to the issue of affording plaintiff a public trial, open to spectators and the press, the Court feels that the matter need not be passed upon at this time. Indeed, the government represented to the Court that the military trial judge has indicated that should the need arise he would invoke his power under the Manual for Courts Martial and restrict the public from attending the proceedings. In view of the fact that the Sixth Amendment right to a public trial is not absolute, injunctive relief as to this point would be inappropriate.

In view of the foregoing the Defendant's Motion to Dismiss is denied.

The Court enters the following Findings of Fact and Conclusions of Law in conjunction with the Plaintiff's Motion For A Preliminary Injunction:

### FINDINGS OF FACT

1. Plaintiff, Master Sergeant in the United States Air Force, is presently under pre-trial confinement, awaiting court-martial on three charges alleging violations of Articles 92, 134 and 81 (conspiracy to violate Article 134), Uniform Code of Military Justice (herein called UCMJ).

2. Plaintiff was arrested and incarcerated by the Air Force on July 2, 1971, and has been under continual restraint since that date. He originally was tried and convicted on charges alleging violations of Articles 81, 92 and 134, Uniform Code of Military Justice, and was sentenced to dishonorable discharge, confinement at hard labor for fifteen years. The conviction and sentence were reversed on October 5, 1972 by the United States Air Force Court of Military Review (United States v. De-Champlain, ACM 21034) on the grounds

that alleged inculpatory statements of the plaintiff were involuntarily obtained and improperly admitted at trial. On February 16, 1973, the United States Court of Military Appeals affirmed the decision of the Air Force Court of Military Review, 44 CMR 150.

3. On May 25, 1973, the Staff Judge Advocate, defendant Major Thomas, transmitted his Advice to the new Convening Authority, defendant Colonel Lovelace, recommending that the charges against the plaintiff, with certain amendments of the specifications, be referred to a rehearing by a general court-martial.

4. On May 31, 1973, the charges against the plaintiff were served upon him and were referred to a court-martial by defendant Colonel Lovelace. One of the three charges referred to therein alleges violations of Article 134, UCMJ, 10 U.S.C. § 934, and a second charge alleges violations of Article 81 UCMJ, 10 U.S.C. § 881, for conspiracy to violate Article 134.

5. Article 134, has been declared unconstitutional. Avrech v. Secretary of Navy, 477 F.2d 1237 (D.C.Cir.1973); Levy v. Parker, 478 F.2d 772 (3rd Cir. 1973); Hooper v. Laird, 482 F.2d 784 (D.C.Cir.1973).

6. On September 5, 1973, the plaintiff moved before the defendant Colonel Stanley for dismissal of the charges under Article 134. This motion was denied without opinion. Plaintiff also raised the same substantive matter before the United States Court of Military Appeals, in a Petition for Extraordinary Relief. The petition was denied in all respects on September 5, 1973 (Misc. Docket 73–46). The Air Force has refused to withdraw the charges based on Article 134.

7. On April 2, 1973, in the case of United States v. Unrue, No. 26,552, the

---

8. The Court notes that in the recent trial of United States of America v. Russo and Ellsberg, No. 9373, United States District Court, Central District of California, Judge Byrne issued a protective order preventing public

disclosure of classified matter, but permitted counsel and his staff, including experts and consultants, access to these documents subject to the terms of the protective order.

United States Court of Military Appeals ruled in an unpublished order that it would not follow the decision of the Court in Avrech v. Secretary of Navy, *supra.*

8. On July 5, 1973, plaintiff directly and through his military counsel retained Leonard B. Boudin, Esquire, civilian defense counsel. On July 6, 1973 and repeatedly thereafter plaintiff by counsel verbally and in writing requested of government trial counsel that the entire record of the prior trial, including the charges and the documents upon which petitioner's original conviction was based and upon which the present case is based, be delivered to the plaintiff's civilian defense counsel for examination and study by the latter and by members of his staff and technical consultants. Plaintiff requested that a copy of the same record be made available to him personally so that he could study it, take notes, and consult with his counsel for the purposes of preparing his defense.

9. The defendants McLucas and Lovelace declined to make any of the "classified" portions of the *DeChamplain* case file information available to plaintiff's civilian defense counsel from July to September, 1973 and stated that plaintiff's civilian defense counsel would have to be "cleared" by the Air Force and by other agencies of the federal government. The defendant Stanley acquiesced in that position of the Air Force and declined to direct that copies of the entire record of the first trial be given to the plaintiff and to the civilian counsel of his choice.

10. The following restrictions have been imposed by the Air Force:

(a) With respect to approximately fifteen documents introduced in evidence at plaintiff's first trial, plaintiff's civilian counsel would not be given copies or even access to the said documents or to that part of the trial record relating thereto. The Air Force has advised that it would seek to avoid this problem by not introducing the said documents into evidence at the new trial.

(b) With respect to nine other documents, the plaintiff's civilian defense counsel would not be allowed to receive copies of them (or the transcript references as to subject), but would be permitted to look at the documents under severe restrictions. He would not be able to examine or retain copies of the documents in his office, but would be required to examine them in the presence of officials holding appropriate security clearances (including military defense counsel), and at a location chosen by the government. He would not be entitled to retain notes with respect to classified matters from such documents for use in his office in preparation for trial, but would have to surrender such notes to be "secured" by the government. Moreover, he would have to submit *all* his notes to government personnel for decision as to whether or not they relate to classified material and must be "secured." Finally, he could not discuss classified information with associates or consultants in his office or home; he could only discuss such information in a designated government office and then only with individuals with the proper security clearances. Nor could the plaintiff himself retain his classified notes for delivery to his civilian counsel or otherwise make written reference to the classified exhibits or to other relevant sections of the record.

(c) With respect to the nine documents referred to in sub-section (b), *supra,* no other members of plaintiff's civilian defense team, including associate attorneys, expert consultants and potential expert witnesses, would be permitted to observe such documents or even to receive second-hand information about their contents, with the exception of one associate attorney and one legal secretary of the civilian defense counsel.

11. Plaintiff presented his demands for unlimited access and retention of documents by himself and his civilian defense counsel, and for copies of all relevant documents and of the entire record of the first trial, to the defendant Colonel Stanley in correspondence

and in pretrial arguments held pursuant to Article 39(a), UCMJ in July and September, 1973. Plaintiff and his counsel voluntarily suggested a protective order against disclosure to unauthorized persons until the public trial to which he is entitled. Colonel Stanley ruled adversely to plaintiff, stating that the defense would be required to comply with all of the above restrictions. Colonel Stanley further ruled that the Air Force was required to "clear" (using its normal standards and procedures) only one (1) associate attorney or law clerk of the civilian counsel, who is the chief defense counsel, and only one (1) secretary/typist, and that no other personnel from the civilian defense counsel's law firm or any of his potential expert witnesses or consultants may know of the "classified" information in the case. Thus, several law partners and associates of the civilian defense counsel, and several technical experts and consultants requested by the defense, are being totally denied access to relevant evidence.

12. Plaintiff sought extraordinary relief from the Court of Military Appeals to correct the restrictions upon access imposed by the defendants. Such relief was denied on September 5, 1973, *supra*.

13. The Uniform Code of Military Justice does not recognize a right to bail or release of convicted defendants pending appeal. Accordingly, in the event plaintiff is convicted and is sentenced to a period of confinement, plaintiff will have served all or a good portion of any sentence in imprisonment prior to exhaustion of his appellate remedies in the military courts. This would be in addition to the over two years that plaintiff already has spent in confinement waiting for trial, appeal, and retrial. Accordingly, unless the defendants are restrained from trying the plaintiff under the circumstances described above, the plaintiff will suffer irreparable injury.

## CONCLUSIONS OF LAW

1. For the purposes of this motion, plaintiff has sufficiently met the requirements for a preliminary injunction as set forth in Virginia Petroleum Jobbers Association v. FPC, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958):

(a) Plaintiff has demonstrated the likelihood of his prevailing on the merits; specifically, that the military lacks jurisdiction to try him for alleged violations of Article 134 UCMJ and that civilian counsel is entitled to full access, subject to a protective order, to all documents relevant to the issues to be tried.

(b) Plaintiff has shown that he will suffer sufficient irreparable injury if the injunction is not issued.

(c) The issuance of this injunction will not substantially harm defendants.

(d) The public interest lies in favor of granting this injunction.

2. Plaintiff need not exhaust his military remedies as that would prove to be a futile and unjust requirement.

3. The preliminary injunction should be granted.